**Jeffrey WINICK, on behalf of himself and all others similarily situated, Plaintiff,**

**and**

**Robert F. Sowell, on behalf of himself and all others similarly situated; Joseph W. Sowell, on behalf of himself and all others similarly situated, Plaintiffs—Appellants,**

**v.**

**PACIFIC GATEWAY EXCHANGE, INC.; Howard A. Neckowitz; Fred A. Weismiller; Sandra D. Grey; Ronald D. Anderson; Robert F. Craver, Defendants—Appellees.**

No. 02–16060.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 2003.

Decided Aug. 15, 2003.

Before: SCHROEDER, Chief Judge, D.W. NELSON, and W. FLETCHER, Circuit Judges.

## MEMORANDUM *

Plaintiffs' Second Amended Complaint alleges that Defendants made material misrepresentations concerning the liquidity of Pacific Gateway Exchange, Inc. ("Pacific Gateway") in violation of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b–5, promulgated thereunder. We affirm the district court's carefully considered Rule 12(b)(6) dismissal.

■ Plaintiffs allege that four statements made by Defendants were materially misleading. First, they point to a statement made in Pacific Gateway's quarterly report for the first quarter of 1999. Plaintiffs contend that Defendants' failure to reveal that the company was late on payments to vendors, specifically that the company had "defaulted" on a $2 million dollar obligation to Harris Corporation, rendered their statement misleading. The fact that the company may have, for undisclosed reasons, been late on payments to Harris Corporation or other vendors does not, however, render the challenged statement false or misleading. Nothing in the Second Amended Complaint suggests that there was any reason to suspect at the time this statement was made that the $200 million commitment letter Pacific Gateway had secured would subsequently lapse in July; thus, there was no reason *not* to believe that the company would have sufficient cash on hand to meet its

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

"outstanding capital commitments, current capital expenditures, and working capital needs through the end of 1999." *See In re Vantive Corp. Secs. Litig.*, 283 F.3d 1079, 1084–85 (9th Cir.2002) (explaining that the PSLRA altered the pleading requirements in securities fraud cases in order to "put an end to the practice of 'fraud by hindsight' ").

■ Second, Plaintiffs point to an almost identical statement made in Pacific Gateway's quarterly report for the second quarter of 1999. We hold that this statement is "forward-looking" within the meaning of the PSLRA. *See* 15 U.S.C. § 78u–5(i)(1). The statement is clearly written in the future tense. Only a few pages before the challenged statement, the report explains that forward-looking statements may be identified by use of the work "believes," and warns that such statements should not be regarded as representations that the predictions will come true. Furthermore, the statement is a prediction of "future economic performance" found "in a discussions and analysis of financial condition by the management." *Id.* In arguing that the statement is partially a statement of existing fact, Plaintiffs focus on the fact that the statement references "existing cash balances" and "existing lines of credit." But the company merely said that it believed existing cash balances and lines of credit, *combined with* cash provided by operating activities (a source of cash necessarily contingent on future events) and "anticipated" financing activities (also obviously contingent on future events), would be sufficient to fund the company's obligations. *Compare Harden v. Raffensperger, Hughes & Co., Inc.*, 65 F.3d 1392, 1405 (7th Cir.1994) (statement that if the company's "plans to restore profitability are not successful ... the Company's stockholder's equity will

continue to erode" suggests that such plans currently exist).

Because the statement is entirely forward-looking, Plaintiffs must, at the very least, allege with particularity facts giving rise to a strong inference that Defendants acted with actual knowledge that the statement was false or misleading. *See In re Silicon Graphics Secs. Litig.*, 183 F.3d 970, 974 (9th Cir.1999); 15 U.S.C. at § 78u–5(c)(1)(B); *id.* at § 78u–4(b)(2). Plaintiffs have failed to do so. They offer only conclusory allegations that Defendants "knew that the Company was going to have difficulty arranging the necessary financing." Plaintiffs point to alleged defaults on vendor payments in support of this contention. While such defaults do support the inference that the company needed additional financing to get by, they do not give rise to a strong inference that the Defendants knew—contrary to their stated belief—that they would not be able to acquire that financing.

■ Third, Plaintiffs point to a statement made in Pacific Gateway's quarterly report for the third quarter of 1999. We believe this statement is also forward-looking. Because it is accompanied by meaningful cautionary language, it falls within the PSLRA's safe harbor and thus is not actionable, regardless of Defendants' state of mind. *See id.* at § 78u–5(c)(1)(A). In the preceding paragraph just before the challenged statement, the report states:

Additional financing arrangements are necessary for the Company to satisfy its capital requirements and *the failure to obtain such arrangements could have a material adverse effect on the Company*. To fund its planned capital requirements, the Company is exploring financing alternatives, including public or private sales of securities, and vendor financing arrangements. *The timing and terms of any financing ac-*

*tivities will be subject to market conditions.*

(Emphasis added.)

■ Fourth, Plaintiffs point to a press release issued March 1, 2000, quoting Defendant Neckowitz. Even assuming that these sorts of vague statements of corporate optimism could otherwise be actionable, Plaintiffs fail to allege with sufficient particularity facts giving rise to a strong inference that Defendants acted with at least deliberate recklessness when they released the statement. *See id.* § 78u–4(b)(2); *Silicon Graphics,* 183 F.3d at 974. Plaintiffs contend that at this point financing efforts had "failed," and thus Defendants knew or were deliberately reckless in not knowing that Neckowitz's optimistic statements would mislead investors about the future of the company. But they offer only the following statement, made in Pacific Gateway's subsequent bankruptcy filing, to support this contention:

> In late 1999, the Company retained Banc of America Securities LLC and Deutsche Bank Alex Brown (the "Initial Purchasers") to underwrite a securities offering. Both of the Initial Purchasers are affiliates of [the Company's lending] Banks. A substantial amount of work was done to prepare for such an offering, but *the offering was never made, leaving the Company without a way to fund its obligations under TAT–14 and Japan–U.S., and leaving it without sufficient working capital and acquisition funds.*

(Emphasis added.) One cannot infer from this statement that the company "gave up" on completing the offering by March 1st, let alone that all financing alternatives had "failed" by that date.

■ Lastly, Plaintiffs argue that when financing efforts "failed" in late 1999, Defendants had a duty to update their prior statements of optimism regarding the ability of the company to meet its capital obligations in the future. They rely on *In re Burlington Coat Factory,* 114 F.3d 1410 (3d Cir.1997), for the proposition that a duty to update attaches to forward-looking statements containing an implicit factual representation that remained "alive" in the minds of investors as a continuing representation. Assuming that this circuit would adopt such a rule, and assuming that the challenged statements in the 1999 quarterly reports contained implicit factual representations, Defendants nonetheless had no duty to update on the facts of this case. The company repeatedly disclaimed any obligation to update its forecasts; thus, the company's predictions regarding its ability to meet its future obligations could not have remained "alive" in the minds of reasonable investors.

AFFIRMED.

